KUSTOM ELECTRONICS, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 77–1567.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 7, 1978.

Decided Dec. 22, 1978.

Earl J. Engle of Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo. (John M. Edgar of Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., on the brief), for petitioner.

Eric G. Moskowitz, N.L.R.B., Washington, D.C. (John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., on the brief), for respondent.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a review of an order of the National Labor Relations Board, which order was issued against the petitioner on July 21,

1977. Kustom Electronics, Inc. has filed a petition pursuant to § 10(f) of the National Labor Relations Act, as amended, 29 U.S.C. § 151 *et seq.* Kustom seeks a judgment setting aside the order of the NLRB. The Board has cross-applied for enforcement of its order. The alleged unfair labor practices occurred in Chanute, Kansas, where Kustom manufactures sound amplifiers, police radar and digital communications equipment.

The finding of the Board was that the Company had violated § 8(a)(5) and (1) of the Act by its refusal to bargain with the Communications Workers of America, AFL–CIO, which the Board had certified as the exclusive bargaining representative of the Company's employees following the representation proceeding.

The activities leading to the hearing before the Board go back to December 9, 1974, at which time the Union filed a representation petition. Following this, a hearing was held on January 23, 1975, for the purpose of determining the appropriate unit for collective bargaining. One of the issues at the hearing was whether a group of employees who had been laid off by the Company on December 18 and December 20, 1974, were eligible to vote in the upcoming election. The decision of the Regional Director of the NLRB was that there be an election in a unit of production and maintenance employees of Kustom Electronics, Inc., which included the music, data communications and radar divisions. The Regional Director ruled that the employees laid off in December 1974 would not be eligible to vote in that election. The Union sought review by the Board of the ruling excluding the employees who had been laid off.

An unfair labor practice charge had been filed with the Board in which it was alleged that the Company's layoff was discriminatory and unlawful. The Regional Director dismissed the charged allegations, and the Union filed an appeal with the General Counsel. So the layoff matters were considered by the Board simultaneously with consideration by the General Counsel of the dismissal of the unlawful labor practices.

The Board issued an order directing that the laid off employees be permitted to vote. This was on May 22, 1975. On May 28, the General Counsel remanded the unfair labor practice proceeding to the Region for further investigation.

At the election, which was held on June 18, 75 votes were cast for representation by the Union; 68 were against. Forty-six of the ballots were challenged. These numbers were later changed following a hearing before Administrative Judge Nixon. The Union continued to prevail 103 to 79.

The Company filed objections to the conduct of the Union in connection with the election, alleging that the Union interfered with the election by (1) misrepresenting that the Company had violated the Act by laying off employees in December 1974, and by failing to give employees wage increases in April 1975, as it had in previous years; (2) misrepresenting that other employees under Union contract had recently received large wage increases; (3) by unfairly employing Board rulings as campaign propaganda; (4) by offering employees financial inducements for their Union support; and (5) by threatening employees with reprisals for failure to support the Union. The Company also objected to the Board's having remanded the unfair labor practice matter to the Region and to its having granted the laid off employees permission to vote, as well as the Board's permitting the same Board agent to both investigate the Union's unfair labor practice charges and to conduct the representation election.

In December 1975 and February 1976, hearings were held looking to determination by the Board of the challenges and objections of the Company. On May 24, 1976, the Hearing Officer issued his report and recommendations on the challenges and objections. He recommended that the objections be overruled in their entirety, that the challenges to eight ballots be sustained, that the other 39 challenges be overruled, and that the ballots be counted. The Company filed objections to the Hearing Officer's report. However, the Board on October 15, 1976, issued its decision which af-

firmed the Hearing Officer's rulings, findings and recommendations. The Board also ordered the Regional Director of Region 17 to open and count the challenged ballots overruled by the Hearing Officer and to issue a revised tally of ballots and an appropriate certification. It was this recount which showed the revised tally, which is mentioned above, namely 103 votes for representation by the Union, and 79 votes against representation. On October 29, 1976, the Union was certified as the exclusive bargaining representative of the Company's employees.

Thereafter, the Union made requests for information that it regarded as necessary to commence bargaining. By a letter of November 19, the Union advised petitioner, according to the Board's Order, that it was ready to commence bargaining and set a proposed date and place for a meeting. However, petitioner, by letter of November 24, refused to bargain with the Union on the grounds that it did not represent an "uncoerced majority of the Company's employees in any unit appropriate for collective bargaining." The further reason was that the Union was improperly certified. The Union then filed an unfair labor practice charge based upon this refusal to bargain.

As a result of the Company's rejecting the Union's request to bargain, the Union filed an unfair labor practice charge on December 2, 1976. The Regional Director issued a complaint. In its answer the Company admitted a refusal to bargain and also denied the request of the Union for certain information relative to the collective bargaining issue. The Company stood on its position that the certification was invalid. Following the Company's action standing on its position of refusing to bargain, the General Counsel filed a motion with the Board for summary judgment based on the proposition that there were no issues of fact which warranted a hearing. The proceeding was then transferred to a panel of three Board members together with a notice to show cause why the motion for summary judgment should not be granted. The Company again stated its position challenging

the validity of the election and the validity of the certification.

The General Counsel's complaint alleged that Kustom had engaged in unfair labor practices in violation of § 8(a)(5) and (1) and § 2(6) and (7) of the Act.

The complaint alleged in substance that on October 29, 1976, following a Board election, the Union was duly certified as the exclusive bargaining representative of Kustom employees in the appropriate unit, but that the petitioner Kustom had refused and continued to refuse to bargain collectively and to furnish certain information, notwithstanding a request by the Union. Petitioner filed an answer to the complaint admitting part of it and denying part of it.

As an affirmative defense, petitioner alleged that the Board's certification of the Union was invalid for the reason that it was based on a revised tally of ballots including the ballots of persons not entitled to vote because their employment had been terminated on December 20, 1974, six months prior to the election. A further defense was that about 62 percent of the employees in the unit had been hired since the election so that the majority status is now in question; that, therefore, the petitioner "has no duty to bargain with the Union."

The Board entered the opinion that is here at issue. The Board noted that the petitioner argued that the laid off employees, found to have a reasonable expectancy of recall by the Board, were ineligible to vote because the layoff was in fact permanent. This position of petitioner was rejected by the Board because of its previous adoption of the Hearing Officer's report to the contrary. The opinion of the Board points out that the test for determining expectancy of recall is the situation as it existed at the time of the election rather than subsequent developments.

The opinion pointed out that in the absence of newly discovered evidence or previously unavailable evidence or special circumstances, a respondent in the proceeding alleging a violation of § 8(a)(5) may not relitigate issues which were or could have

been litigated in a prior representation proceeding.

Further, no merit was determined to exist as to the petitioner's contention that because 62 percent of its work force was newly hired there existed reasonable grounds to doubt the Union's majority status, for the reason that the obligation to bargain extends one year from the date of the certification and employee turnover does not constitute unusual circumstances within the meaning of *Brooks v. NLRB*, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954). It therefore denied a hearing on employee turnover and rejected petitioner's contention that it could lawfully refuse to bargain on the basis of employee turnover.

The conclusion of the Board was that on June 18, 1975, a majority of the employees of petitioner in a bargaining unit designated the Union as their representative for the purpose of collective bargaining with the petitioner. As a result, the Union was certified as a collective bargaining representative on October 29, 1976. The Union has sought to bargain collectively, but petitioner has refused to do so.

The Board ordered the Company to cease and desist from refusing to bargain collectively, and to cease and desist its refusal to furnish the Union with information relevant and necessary for the collective bargaining, interfering with, restraining, and coercing, employees in the exercise of rights guaranteed them under § 7 of the Act. The Board also ordered that it proceed to bargain with the Union regarding rates of pay, wages, hours and other terms and conditions of employment. The initial period of certification was set on the date petitioner commenced to bargain in good faith with the Union as the recognized bargaining representative in the appropriate unit.

Numerous points are advanced by the Company in support of its demand that the Board's order finding that the petitioner engaged in unfair labor practice by refusing to bargain with the Union was in error and should be vacated. Many of these points are factual and hence are inappropriate, since we are unable to reevaluate the evidence where, as here, there exists a conflict and the Board has chosen a version of the evidence with which the Company disagrees, but which is adequately supported by evidence.

The underlying question is whether the Board erred in finding and concluding that the employees who were laid off on December 20, 1974, were entitled to vote in the June 18, 1975, election, for if all of these votes were thrown out, the certification would be invalid as would be the Board's order requiring the Company to bargain collectively.

There are other subsidiary issues, but these appear to be more in the nature of window dressing than contentions capable of causing the proceedings to be set aside. Much complaint is made about the timing of Board rulings in relationship to the election. Also, one threat is emphasized, and it is generally contended that the Union interfered with the election by disseminating slanderous, false and inaccurate information concerning the permanent layoff of employees on December 20, 1974. All of these issues are very carefully held up to the light, so to speak, by the Trial Examiner, who determined that the matters lacked merit.

Our conclusion is that the Trial Examiner and, in turn, the Board were correct and that the Board's Order is entitled to be enforced.

I.

The Company admits that the proper test for determining the right to vote under circumstances such as these is whether the employees who had been laid off had at the time of the election a reasonable expectation of reemployment within a reasonable time in the future. The rationale for this is that where a laid off employee has a reasonable expectation that he will be called back when business picks up, he has a bona fide interest in the conditions which will obtain when he returns. *N. L. R. B. v. Hondo Drilling Company*, 428 F.2d 943, 946 (5th Cir. 1970); *N. L. R. B. v. Jesse*

*Jones Sausage Co.*, 309 F.2d 664, 666 (4th Cir. 1962); *Marlin-Rockwell Corp. v. N. L. R. B.*, 116 F.2d 586, 588 (2d Cir.), *cert. denied*, 313 U.S. 594, 61 S.Ct. 1116, 85 L.Ed. 1548 (1941). *See N. L. R. B. v. C. H. Sprague & Son Co.*, 428 F.2d 938, 940 (1st Cir. 1970).

█ The question whether the employees here had a reasonable expectation at the time of the election that they would be reemployed was one of fact and there was adequate evidence to support the Board's conclusion on this. A number of the employees who were laid off were shown to have returned in the spring of 1975. Some of these continue to be challenged by the Company, but there could be no question that they had a reasonable expectation of continued employment. There was also evidence that the Company's policy was to recall laid off employees and then put them to work in other divisions. Furthermore, at the time in question, although the Company's financial condition had been poor it showed promise, which could lead the employees involved to believe that they were likely to be called back. The Company argues that employees were given to understand at the time of the layoff that it was permanent. This is not conclusive because it is the condition at the time of the election that counts. *N. L. R. B. v. Jesse Jones Sausage Co., supra*, at 666.

There is one other fact that is worthy of mention and that is that notice to some of the employees was that the layoff would be temporary. Later they were notified that they should consider it to be permanent. Those who were laid off on December 20 did not receive individual notices that it would be permanent. There was a bulletin board letter posted. Also, some of the supervisors advised the employees that it would be permanent, but evidence was unclear whether all of them made the announcement. One employee said that she was told that it was to be temporary.

█ It cannot be said that the General Counsel's dismissal of the Union's charge of unfair labor practice growing out of the December layoff is legally inconsistent with the Board's position that there was a rea-sonable expectation of recall. The ruling that the December layoff was not illegal did not *ipso facto* establish that the employees could not anticipate reasonably that they would be recalled in the face of the various evidence as to the Company's policy to recall people laid off as opposed to hiring new people. The efforts of the Company therefore to elevate this issue to one of law rather than fact cannot be accepted. The issue was one of fact which was tried and resolved against the Company.

## II.

█ The election was, of course, under the supervision of the Board and it had a measure of discretion in the manner in which it conducted the election. There has been no showing that there was an abuse of discretion in this respect. One objection was that the Union misrepresented that the Company had violated the Act (NLRA) by laying off a number of employees. The Hearing Officer considered all of these objections and recommended that they be overruled. It is said that there was misrepresentation as to the Company violating the Act by laying off the employees, failing to give employees wage rate increases given in prior years and unfairly employing Board rulings as campaign propaganda, and making threats of reprisals for failure to support the Union.

█ It does not appear that the Company has satisfied its burden of proof as to the substantiality of these claims and objections. The one threat that was made was not related in time to the election and was not a direct threat. As to the misrepresentations and unfair campaign propaganda, a good deal of it would appear to be rhetoric and basically insubstantial. In any event, we cannot say that it is of such magnitude that this court can regard it and weigh it so as to upset the judgment of the Board.

The threat to the employee, one Ruth Daniel, was during a discussion Ms. Daniel had with Terry Hague and two other employees regarding the Union. She remarked that she would not be affected by

any strike since she could cross the picket line and go to work. Hague responded, "No you would not because you would be stopped." She asked him what he meant and he said, "Your head would be bashed in if nothing else." This statement by Hague was his own remark and was in the course of a conversation, and the Board was free to decide that Daniel was not coerced by the statement.

### III.

■ Complaint is made about the Union compensating witnesses who appeared at the representation hearing for their loss of time. It is said that the payments were unlawful. The Board did not consider these payments to be anything more than remuneration for loss of time and hence they did not invalidate the election. The same was true of workers who were compensated on an hourly basis for time spent in aiding the Union in its campaign. Sometimes the payments exceeded somewhat the payments they received from the Company. The Board did not believe that the payments were of such a nature that they in themselves established that the employees were influenced because of it.

We consider the contention that the Board erred in not sustaining the Company's objections to the manner of handling the election, and it does not appear that there was any substantial impropriety in this area. It is also argued by the Company that the cumulative effect of all of their objections should constitute a basis for invalidating the election (even though no single one of the objections is sufficient). It does not appear that the Company's objections considered as a whole carry sufficient impact to justify the appellate court's ruling that the election was invalid.

■ Our conclusion is, from a study of the contentions and consideration of the evidence which was presented, that the issues generally are factual in nature, and it does not appear that there was an abuse of discretion by the Board in its ruling.

Accordingly, there being nothing that has been called to our attention to justify set-ting aside the Findings, Conclusions and Orders of the Board, it is ordered that the ruling of the Board be approved and that its Orders be enforced.