**WINDSOR WOODWORKING,
INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**No. 80–1634.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1981.

Decided May 8, 1981.

P. L. Nymann, Jacobs, Gaul, Nymann & Green, Sioux City, Iowa, for Windsor Woodworking Inc., petitioner.

Paul E. Bateman, National Labor Relations Board, Washington, D. C., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Acting Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, National Labor Relations Board, for respondent.

Before LAY, Chief Judge, ROSS, Circuit Judge, and VAN PELT, District Judge.*

ROSS, Circuit Judge.

In this case Windsor Woodworking, Inc. (Windsor) of Des Moines, Iowa, petitions this court for review of orders of the National Labor Relations Board (NLRB or Board) dated May 5, 1980, and June 23, 1980, ordering Windsor to bargain collectively with Local Lodge No. 1513, International Association of Machinists and Aerospace Workers, AFL–CIO (union). NLRB has cross-applied for enforcement of its orders. We grant enforcement and deny the petition for review.

A representation election was held on December 22, 1978, involving employees of Windsor. Of the 57 votes cast, 12 were challenged. The vote, excluding the challenged ballots, was 25 for the union and 20 against the union. The Board ordered 5 of the votes counted which resulted in a 25–25 tie. The Board then ordered a hearing on whether the other 7 challenged ballots should be counted. These 7 votes had been cast by individuals who had been "let go" by Windsor. The hearing was held on April 17, 1979. On August 7, 1979, the Board adopted the recommendation of the hearing officer that the 7 votes be counted. The recommendation was based on a factual finding that these seven individuals had a reasonable expectation of returning to work. Windsor claimed they had no such reasonable expectation, but the Board held to the contrary. Following certification of the union, the company refused to bargain. The Board granted the General Counsel's motion for summary judgment on an unfair labor practice complaint and a bargaining order was issued.

## A. Petitioner's claims

In this appeal Windsor urges that the Board erred for the following reasons:

1. A year earlier five employees had been let go at about the same time of the year and none of them returned to work.

2. A new plant with increased efficiency, coupled with a slow period in the industry as a whole, made it unlikely that there would be a need for additional hiring.

3. Windsor's general manager was asked by the hearing officer this question and gave this answer: "Assuming the market place to expand at normal growth levels as you have experienced in the past, would you be able to operate with the labor force you have?" His response was, "At normal growth levels, I would say 'yes.'" Windsor claims this testimony was unrefuted but was not credited by the hearing officer without stating a reason.

* The Honorable Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

4. The hearing officer did not place the burden of proof on the union nor did he resolve issues of credibility.

5. The Board granted the Regional Director's motion for summary judgment without considering the response of Windsor filed on February 27, 1980, even though the order was not issued until May 5, 1980. Upon objection from Windsor, the Board refused to consider the response because, according to its records, it was filed seven days late.[1]

The thrust of the response was to the effect that the union certified was different from the union defined in the complaint. It also alleged there was additional evidence which had been filed with the Board in August 1979 to the effect "there was not at the time of the complaint a reasonable expectation that any of the seven persons voting the remaining seven challenged ballots would be recalled to work." This included an affidavit of Mr. Carmichael dated August 7, 1979. Other arguments were made which Windsor had already advanced.

The Board acknowledged the defect in identification of the union but indicated it was a technical error which would be corrected. We accept that explanation as reasonable. The failure to consider the additional evidence was error, but in our view would not have changed the result. This court has considered this additional evidence, including the affidavit of Carmichael stating that as of August 23, 1979, the number of workers had been reduced to 49 and would soon be reduced to 44. This change, eight months after the election and after the initial Board decision, does not affect the question of whether the seven employees who were "let go" could have

reasonably expected to return to work as of the date of election. Compare *NLRB v. D. H. Farms Co.*, 465 F.2d 1230, 1231 (6th Cir. 1972) (eligibility of laid off employees determined at pre election hearing, therefore, hearing should be held on conditions as of date of election based on new evidence submitted by employer). See also *Kustom Electronics v. NLRB*, 590 F.2d 817, 820–22 (10th Cir. 1978); *NLRB v. Atkinson Dredging Co.*, 329 F.2d 158, 164 (4th Cir.), cert. denied, 377 U.S. 965, 84 S.Ct. 1647, 12 L.Ed.2d 736 (1964); *NLRB v. Jesse Jones Sausage Co.*, 309 F.2d 664, 666 (4th Cir. 1962). The failure of Windsor to state to the seven employees that they were terminated rather than laid off is some indication that Windsor, at the very least, wanted to retain its options.

## B. The Board's claims

In response to the claims made by petitioner, the Board urges that there is substantial evidence on the record as a whole to support the Board's determination and gives these reasons:

1. The Board is vested with wide discretion in conducting elections and our review must be limited to whether the Board reasonably exercised its discretion.

2. Whether the employees had a reasonable expectation of being recalled to work "depends on objective factors, including the past experience of the employer, the employer's future plans, and the circumstances of the layoff, including what the employees were told as to the likelihood of recall." (Citations omitted.)

3. The burden of proof was not on the union.

---

1. Windsor's response was originally due on February 6, 1980, but upon Windsor's motion the time was extended to February 20 (according to the Board). Windsor claims to have received a telephoned telegraphic communication extending the time to February 28.

We find the Board's refusal to consider the response under these circumstances to be absolutely indefensible. We note in passing, the Board has waited on many occasions, including this case, until on or after the last day for filing before even requesting an extension of brief

date on cases filed in this court. Apparently the Board has one set of rules for briefs filed with it and one set for filing briefs in this court. In this case, petitioner's brief was filed on November 4, 1980, and the Board's brief was not filed until December 22, 1980, even though it was due on December 3, 1980. The request for extension of time was not filed until December 5, 1980, and this court ordered the Board to file its brief by December 17, 1980. The brief was mailed on December 17, 1980, and received for filing on December 22, 1980.

4. In a prior layoff of employees of Windsor in early 1977, all but one of the employees were recalled to work.

5. The company's business was seasonal in nature and the employees were "let go" at the start of the slow season and before the new plant was in full production.

6. The company did not tell the seven employees that they would not be recalled. Mr. Kenney claimed that two days after the layoff, General Manager Carmichael told him that he didn't know how long the layoff would last. There is other similar but inconclusive evidence in the record as to Gordon Bell and Stephen Earp.

7. The Board properly refused to consider Windsor's response to the motion for summary judgment because it was untimely filed.[2]

### C. Conclusion

Our study of the briefs and the record convinces us that there was substantial evidence on the record as a whole to justify the Board's conclusion. In reaching this conclusion, we rely on the evidence relating to the claims of the Board set forth above in paragraphs 4, 5 and 6. Although this evidence was not conclusive, it certainly permitted the inference that the employees had a reasonable expectation of returning to work.

The Board's order is hereby enforced.