**Robert DAMRON, et al., Plaintiffs,**

v.

**ROB FORK MINING CORPORATION, et al., Defendants.**

**Civ. A. No. 89–250.**

United States District Court,
E.D. Kentucky,
Pikeville.

June 6, 1990.

Sherry Brashear, Goss & Goss, Harlan, Ky., for plaintiffs.

Joseph L. Hamilton, Shannon Antle Northam, Stites & Harbison, Louisville, Ky., for Bethlehem Steel and BethEnergy.

Bruce A. Levy, Pikeville, Ky., James D. Asher, Polly, Craft, Asher & Smallwood, Whitesburg, Ky., for Mine 29 Mining & Processing, Inc.

Forrest H. Roles, Mark E. Heath, Smith, Heenan & Althen, Charleston, W.Va., for Rob Fork Mining Corp. and Rob Fork Processing Corp.

Charles J. Baird, Baird & Baird, Pikeville, Ky., for Jackal Mining Co. and Sidewinder Mining.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

The plaintiffs, former employees of defendant Mine 29 Mining and Processing, Inc. [Mine 29], filed this action claiming that Mine 29, in association with defendants Rob Fork Mining Corporation and Rob Fork Processing Corporation [Rob Fork], Jackal Mining Company [Jackal], Sidewinder Mining Company [Sidewinder], and BethEnergy Mines, Inc.[1], failed to give sixty days notification of the closing of Mine 29's operations as required under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* [WARN Act]. Defendants Rob Fork, Jackal, and Sidewinder have each moved for summary judgment contending, among other points, that they are not "employers" within the meaning of the WARN Act.

At issue here is the extent to which laid off persons are to be included in the calculation of "employees" for purposes of the WARN Act. An "employer" under the Act is defined as a business enterprise that employs one hundred or more employees, excluding part-time employees. 29 U.S.C. § 2101(a)(1)(A). There is no specific definition of "employee" for the purposes of that section. However, the Act requires notification of a plant closing or mass layoff to all "affected employees", who are defined as those persons "who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer". 29 U.S.C. § 2101(a)(5).

Although enforcement of the WARN Act is vested in the courts, 29 U.S.C.

---

1. This action is stayed as to Mine 29 because that defendant is presently in bankruptcy proceedings. [Record No. 14]. BethEnergy Mines, Inc. was only recently added as a party to this action. [Record No. 60].

§ 2104(a)(5), the Secretary of Labor is instructed to promulgate interpretative regulations. 29 U.S.C. § 2107(a). The Secretary has determined that, for the purpose of calculating the requisite number of employees:

> Workers on temporary layoff or on leave who have a reasonable expectation of recall should be counted as employees. An employee has a 'reasonable expectation of recall' when he/she understands, through notification or industry practice, that his/her employment has been temporarily interrupted and that he/she will be recalled to the same or to a similar job.

29 C.F.R. § 639.3(a)(1).

The plaintiffs claim that Mine 29 had a total of seventy-three persons working at its operations as of October 2, 1989, including fifty-nine hourly employees and fourteen salaried. To reach the requisite one hundred employees, the plaintiffs allege that there were plans to recall approximately sixty additional hourly workers to operate two new sections of the mine on three shifts and to add two shifts to the preparation plant. These recalled workers were to come from a "panel" of laid off workers with recall rights based on seniority.[2]

The plaintiffs rely on the Secretary's interpretation of "employee" to assert that persons who have been laid off for over ten years may be counted as "employees" under the WARN Act because of the "boom/bust cycle" of employment in the coal mining industry. They cite the alleged recall of sixty persons as evidence of "industry practice" giving rise to a "reasonable expectation of recall" for those individuals on the panel. The plaintiffs point out that employment of hourly workers at the site grew to 220 by 1980, then dropped to zero until 1983, then grew again to 50 by 1985.

The parties have not cited any court decision interpreting this aspect of the WARN Act, nor has the court been able to locate any such opinion. The defendants first argue that the Secretary's recommended inclusion of laid off workers is incorrect, noting that the statute says nothing about laid off employees.

As earlier explained, notification is required for all "affected employees", *i.e.*, all persons who may "reasonably be expected to experience an employment loss". An "employment loss" includes both termination and a layoff of more than six months. 29 U.S.C. § 2101(a)(6). A person who has been laid off is not terminated, but may, on the facts of the particular situation, harbor some expectation that he or she will be returned to full employment with that employer. One such situation cited by the Secretary is the construction industry, in which employees are merely laid off until the next job begins.

A person in that circumstance would reasonably experience an "employment loss" by virtue of a business closing which results in actual termination, raising the WARN Act require sixty days notification. It would be unreasonable to construe the Act as requiring notification to a person who cannot be counted as an "employee". Thus, the interpretation of the Secretary including laid off workers is clearly consistent with the WARN Act. The relevant question becomes whether laid off employees, under the facts of the particular case, would "reasonably experience an employment loss" by virtue of the employers closing.

The parties in this case have debated the meaning of the term "temporary" as used in § 639.3(a)(1). However, the inclusion use of that term by the Secretary does not denote a requisite element for applicability of the statute. The expected length of the layoff should simply be a factor considered in determining whether the employee had a "reasonable expectation" of returning to work for that employer. There is no support in the statutory language for the use of "temporary", whatever its definition, to limit the period for which an employee

---

**2.** The panel employees were formerly employed by BethEnergy, which had sold its mining rights to the operation in question to Rob Fork. Rob Fork then contracted out the site to Mine 29. Mine 29 had agreed to recognize the BethEnergy panel.

344

would have reason to believe he would be recalled. Conversely, a person may not denominate his layoff as "temporary" and automatically infer that there existed an "employment loss" by the plant closing or mass layoff.

The specific WARN Act analysis requires a determination of whether an employee would "reasonably experience an employment loss". Rather than await case law development on this phrase, the Secretary adopted a substantially similar analysis formulated under the National Labor Relations Act by the National Labor Relations Board's [NLRB] use of the "reasonable expectation of recall" test. The NLRB case law interpretation of that term, used in determining voter eligibility for representation elections, could then be utilized for the WARN Act. 54 Fed.Reg. 16,044.

■ The parties appear to agree with this suggestion by the Secretary and it, likewise, appears to this court to be an equally applicable phrase in determining those persons to be counted for WARN Act purposes. The NLRB has developed three criteria for this analysis: (1) the past experience of the employer; (2) the employer's future plans; and (3) the circumstances of the layoff, including what the employees were told as to the likelihood of recall. *See, e.g., Atlas Metal Spinning Co.,* 266 NLRB 39, 112 LRRM 1273 (1983). The court agrees with the Secretary that industry practice contributes to this analysis.

■ The defendants admit that Mine 29 had never laid off any employees. On the other hand, Mine 29 had been in business only eleven months. After its initial hiring, a total of ten employees were recalled and eight more hourly workers were scheduled to be added October 2, 1989. [Record No. 26, Rob Fork Exhibit A, Affidavit of Gary Royalty]. Mine 29's predecessor, BethEnergy, had laid off 220 workers in 1980 and had managed to hire only some fifty workers by 1988. [Record No. 40, Plaintiff's Exhibit 2, Affidavit of Freddie Bowling].

The plaintiffs cite this as evidence of an improving economic cycle leading panel members to assume a reasonable expecta-

tion that they would eventually be recalled. However, this is not a situation involving a cycle of full employment to mass layoff and back to full employment. Rather, the numbers of employees clearly show a more permanent reduction in work force. Only one-quarter of the hourly workers laid off in 1980 had been rehired by 1989.

It is admitted that Mine 29 had future plans to add ten hourly workers in January, 1990 for a second shift [Record No. 26, Royalty Affidavit], but the defendants deny that any plans existed to add some sixty employees. [Record No. 48, Exhibit A, Royalty Affidavit]. The plaintiffs have offered affidavits from Mine 29 employees who state that they were informed by management that such plans were, in fact, being made. [Record No. 40, Exhibits 1, 2, 7, 8, and 9]. One affidavit for the plaintiffs' agrees with the defendants' claim the planned addition of a third mine section would replace one which would soon be mined out. [Record No. 40, Plaintiffs' Exhibit 1, Affidavit of James Webb]. Few, if any, workers would be added in that respect.

As pointed out by the defendants, the plaintiffs' affidavits contain a glaring amount of hearsay, speculation and assumptions as to the alleged hiring plans of Mine 29. Only those plans in the "near and foreseeable future" are to be examined. *Data Technology Corp.,* 281 NLRB (No. 136) 1005, 1006 (Sept. 30, 1986). Nothing in the WARN Act indicates that a company's long range goals have the effect of committing it to any number of employees which may be estimated as potentially needed in furtherance of those plans.

Although a definite plan to recall workers is not required, some limitation must exist on how far into the future this analysis may look. The purpose of the WARN Act, as set out by the Secretary, is helpful in this regard. "Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these

workers to successfully compete in the job market." 29 C.F.R. § 639.1.

No such "transition time" was necessary for the panel workers in this case. They had been laid off for eight to ten years and held only the hope that, if business continued to expand, they might eventually be called back to work. The alleged expansion by Mine 29 was unquestionably a long range goal. Nothing in the plaintiffs' affidavits, those that are based on personal knowledge, suggests a timetable for any large recall. The affidavits lack any indication of definiteness as to the addition of sixty workers. At most, the "near and foreseeable future" held only a plan to recall ten workers in January. That addition would still fail to satisfy the WARN Act threshold.

Finally, the "circumstances" of this case are perhaps the most telling as to reliance by panel members on expected growth at Mine 29. There is no evidence in the record that the miners on the panel were aware of any long range plan to add sixty workers at Mine 29. The company certainly had not made that representation to panel members and none of the affidavits indicate that any other persons had informed the next sixty members of the panel to expect a recall.

Although the plaintiffs urge that ten years is not too long to retain an expectation of being recalled, they have pointed to no cases involving such an extensive lapse of employment. Moreover, the facts of this case simply do not lead to such a conclusion. The coal industry has, of course, experienced "boom/bust" cycles, including a "bust" in the early 1980's. Still, the plaintiffs do not attempt to rebut the defendants' assertion that the coal industry has experienced a steady decline in overall employment. The Mine 29 and BethEnergy operations since 1985, with their minor recalls and significantly lower employment after 1980, are evidence of this truth.

The facts of this case cannot be interpreted as a mere "interruption" in employment for the purposes of the WARN Act. Although the cycle of layoff to employment in the coal industry may be slower than a period of weeks or months, the eight to ten year period in this instance and the slowness of any growth taking place at Mine 29 had all appearances of permanence. A promising financial picture may certainly raise a laid off employee's expectations. *See Kustom Electronics, Inc. v. N.L.R.B.*, 590 F.2d 817, 821–22 (10th Cir.1978). Unlike the employer in *Kustom Electronics*, there was no record of layoff and recall accompanying the apparently improving business in this instance to raise a legitimate expectation of a substantial recall in the near future. The panel members here held only "hope", not a "reasonable expectation" that they would actually be returned to work in the near and foreseeable future.

The method of calculation proposed by the plaintiffs would effectively require the inclusion of nearly every laid off employee during a period of successful business growth. It would cast a significant element of uncertainty over how many persons to count as employees in light of the company's long range plans and goals. This is not the result sought by the WARN Act. At a maximum, some eighty-three persons were affected by the loss of employment or the expectation of employment some three months after the closing was announced. This is below the requisite number for enforcement of the WARN Act. Accordingly,

IT IS ORDERED that the motions for summary judgment of defendants Rob Fork, Jackal, and Sidewinder be, and the same hereby are, GRANTED.