945 F.2d 121
 120 Lab.Cas. P 10,942, 6 IER Cases 1448
 Robert L. DAMRON; Randall Burke; Leonard Fleming; Ricky
D. Mullins, Plaintiffs-Appellants,
v.
ROB FORK MINING CORPORATION; Rob Fork Processing
Corporation; Jackal Mining Company; Mine 29 Mining and
Processing, Inc.; Sidewinder Mining Company; Bethlehem
Steel Corporation; BethEnergy Mines, Inc., Defendants-Appellees.
 No. 90-6367.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 7, 1991.
Decided Aug. 6, 1991.
 
 Sherry Brashear, Goss & Goss, Harlan, Ky. (argued and briefed), for Robert Damron, Randall Burke, Leonard Fleming and Ricky D. Mullins.
 Ronald E. Meisburg, Smith, Heenan & Althen, Washington, D.C., Forrest H. Roles (briefed), Mark E. Heath (briefed), Smith, Heenan & Althen, Charleston, W. Va., for Rob Fork Mining Corp., and Rob Fork Processing Corp.
 Charles J. Baird, Pikeville, Ky., for Jackal Mining Co., and Sidewinder Min. Co.
 James D. Asher, Whitesburg, Ky., Bruce A. Levy, Pikeville, Ky., for Mine 29 Mining and Processing, Inc.
 Joseph L. Hamilton (briefed), Stites & Harbison, Louisville, Ky., for Bethlehem Steel Corp., and BethEnergy Mines, Inc.
 Before KEITH and BOGGS, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 Plaintiffs are four former employees of defendant Mine 29 Mining and Processing, Inc. (Mine 29), who seek damages, lost wages and benefits "for themselves and all other members of the class" which they described as "employees who were employed or who had a reasonable expectancy of recall and suffered an employment loss under 29 U.S.C. § 2101(a) of the [Worker Adjustment and Retraining Notification] Act[1] when the defendants told them their services were no longer needed." Plaintiffs originally sued Mine 29,[2] Rob Fork Mining Corporation (RFMC), Rob Fork Processing Corporation (RFPC), Jackal Mining Company (Jackal), Sidewinder Mining Company (Sidewinder), Bethlehem Steel Corporation (Bethlehem), and BethEnergy Mines, Inc. (BethEnergy); Bethlehem and its subsidiaries were subsequently dismissed by an agreed order.
 
 
 2
 BethEnergy moved for summary judgment, contending that it was not an employer or mine owner within the meaning of the WARN Act at the time of announcement of the mine closing in question, having conveyed its interests to defendants, RFMC, RFPC, and others, on November 29, 1988. The WARN Act became effective six months after enactment on February 4, 1989. The Act was not in effect at the time the sale was effectuated and for this reason the district court granted BethEnergy summary judgment. 739 F.Supp. 341.
 
 
 3
 The district court also granted summary judgments for defendants RFMC, RFPC, Jackal, and Sidewinder, because at a maximum only 83 persons who were employed, or expected to be re-employed, "were affected by the loss of employment some three months after the closing was announced." Since 100 persons had to be employed, or reasonably expected to be re-employed, for the WARN Act to be effective, the district court held that these four defendants should be granted judgment. Summary judgment was thus granted to all defendants except as to Mine 29. See supra n. 2. No class was certified as requested by plaintiffs, who have appealed the grants of summary judgment as to all remaining defendants.
 
 
 4
 Plaintiffs contend that they are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5) of the WARN Act; that RFMC, RFPC, and Mine 29 are "employers" within the meaning of 29 U.S.C. § 2101(a)(1) of said Act; and that Jackal is a purchaser of the employer's business within the meaning of 29 U.S.C. § 2101(b) of said Act. Plaintiffs claim that there was a "plant closing" or "mass layoff" on October 13, 1989, within the meaning of 29 U.S.C. §§ 2101(a)(2) and (3) of the Act, and that on said date there was a sale of the employer's business in Pike County, Kentucky, to Jackal within the meaning of 29 U.S.C. § 2101(b)(1).[3] Plaintiffs aver that they did not receive, as aggrieved employees, from defendants any 60-day notice of the closing as prescribed by the WARN Act. They assert that at least 55 active mine employees and 46 others "with a reasonable expectancy of recall" were terminated in October, 1989, thus amounting to the 100 aggrieved employees required for application of the Act. They claim also that there were at that time plans to recall approximately 60 hourly workers and to add shifts to the mine operations in question in the future. The district court found that plaintiffs were so-called "panel employees" formerly working for BethEnergy, which sold mining rights to the operation in controversy to RFMC and RFPC, which then "contracted out the site to Mine 29 [which] had agreed to recognize the BethEnergy panel."The question in this case is whether former employees of BethEnergy, who were laid off for approximately eight to ten years and never recalled during that period, should, nevertheless, be considered "employees" of Mine 29 or other defendants so that 100 or more persons could be considered as "employees" of that particular deep mine operation for purposes of the WARN Act.
 
 
 5
 Apart from the regulations and looking only at the statute which refers to part-time employees as "employees" under certain circumstances, we would have little problem in concluding, as did the district court, that plaintiffs are not employees of any defendant nor are they otherwise similarly situated to plaintiffs. Black's Law Dictionary 525 (6th ed. 1990), for example, defines an employee as "[o]ne who works for an employer; a person working for salary or wages."[4] An employee would ordinarily be considered then as one working or performing services regularly for an employer. Plaintiffs do not fall into that category, and have never been in that category for any defendant except BethEnergy many years prior to the termination in question.
 
 
 6
 [A]lthough it may generally denote regular employment as distinguished from casual, incidental, or occasional employment, and usually a contract of service ... is required ..., the test to determine whether one person is another's employee is whether or not he is subject to the control of such other person.
 
 
 7
 30 C.J.S. Employee § 673-74 (emphasis added) (footnotes omitted).[5] In sum, the statutory language and use of the term "employee" would not generally include plaintiffs.
 
 
 8
 Title 29, U.S.C. § 2101(a)(1) defines an "employer" as a business enterprise that employs
 
 
 9
 (A) 100 or more employees, excluding part-time employees; or
 
 
 10
 (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime).
 
 
 11
 Title 29, U.S.C. § 2101(a)(5) defines "affected employees" as those "who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." Plaintiffs clearly do not come within the statutory definition of subsection (A) part-time employees, nor did they work the requisite hours to qualify under § 2101(a)(1)(B). There is no statutory reference to laid-off employees being part of the requisite 100 or more employees.
 
 
 12
 The Secretary of Labor has promulgated an interpretative regulation with respect to the WARN Act language applicable to the 100-employee requirement:
 
 
 13
 Workers on temporary layoff or on leave who have a reasonable expectation of recall are counted as employees. An employee has a "reasonable expectation of recall" when he/she understands, through notification or through industry practice, that his/her employment ... has been temporarily interrupted and that he/she will be recalled to the same or to a similar job.
 
 
 14
 29 C.F.R. § 639.3(a)(1). The key expression in the regulation upon which plaintiffs rely is "temporary layoff." (Emphasis added). Both Webster and Black define "temporary" as meaning for a limited time only. Considering the usual and ordinary meaning of the words "temporary layoff," it is difficult to see how it could encompass a person absent from employment for many years. Plaintiffs do not claim to be on "leave." The undisputed facts in this case would eliminate plaintiffs, in our view, from the definition of 29 C.F.R. § 639.3(a)(1); they were not on "temporary layoff" so that they cannot be counted as employees covered under the WARN Act. Plaintiffs stated in their complaint, it should be remembered, that "defendants told them their services were no longer needed." (Emphasis added).
 
 
 15
 But even if, for purposes of argument, plaintiffs could be considered on temporary layoff under the regulatory language, we conclude that the district court was not in error in concluding as a matter of law that plaintiffs did not establish a "temporary layoff" as set out in the regulation.
 
 
 16
 The district court noted that the Secretary makes an analysis under the regulation's "reasonable expectation of recall" language similar to that used in the National Labor Relations Act (NLRA) in such situations.
 
 
 17
 The following criteria were utilized in the analysis by the district court and are comparable to the NLRB factors used to consider persons on layoff as employees:
 
 
 18
 (1) past experience of the employer;
 
 
 19
 (2) the employer's future plans;
 
 
 20
 (3) the circumstances of the layoff;
 
 
 21
 (4) expected length of the layoff;
 
 
 22
 (5) industry practice.
 
 
 23
 In addressing these criteria, the district court considered whether plaintiffs were employees of an employer "who have a reasonable expectation of recall." No plaintiff claims, with respect to the regulation language, that he received notice of any recall or anticipated recall from any defendant. Plaintiffs have demonstrated no industry practice, nor have they cited a case that considers a former employee on layoff status for the eight to ten year period involved in this case to have a "reasonable expectation" of recall.
 
 
 24
 The caselaw cited by plaintiffs comes nowhere near such a lengthy period of layoff as involved here. Windsor Woodworking, Inc. v. NLRB, 647 F.2d 859 (8th Cir.1981), involved a business, seasonal in nature, with persons who had been laid off less than a year before who claimed to be employees. Knapp-Sherrill Co. v. NLRB, 488 F.2d 655 (5th Cir.), cert. denied, 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974), also involved "temporary seasonals" at a vegetable processing plant hired on a year-to-year basis. The election in controversy in that case took place during the year of the layoff; the laborers in that case were "temporarily laid-off." The election and the layoff also took place in the same year in NLRB v. Atkinson Dredging Co., 329 F.2d 158 (4th Cir.), cert. denied, 377 U.S. 965, 84 S.Ct. 1647, 12 L.Ed.2d 736 (1964). NLRB v. Jesse Jones Sausage Co., 309 F.2d 664 (4th Cir.1962), also involved a short-term, temporary seasonal layoff. ("[T]he reduction in working force [and layoff] was regarded by all concerned as only temporary." Id. at 666 (emphasis added)). About a six-month period was involved in Jesse Jones. We find none of these cases persuasive or supportive of plaintiffs' position here. Plaintiffs submit no authority, in sum, that considers "temporary layoff" to extend for as much as eight years, or that they may have a reasonable expectation of recall after such a period of time.[6]
 
 
 25
 The greatest number of persons employed in October 1989 at Mine 29, as claimed by plaintiffs, was 73, including 8 recent recalls. (In the response to defendants' motion for summary judgment, plaintiffs indicate employment at Mine 29 to be 57 or 59 on October 2, 1989). Plaintiffs conceded in this same response that there were "no workers between 1980 and 1983," and "50 hourly workers by 1985" in Mine 29. One worker was recalled who had been laid off for some 8 years.[7]
 
 
 26
 Plaintiffs had not been notified by any defendant on appeal, during the long term when their services were not needed, that their employment was only "temporarily interrupted," or that they were considered seasonal, or that they could be expected to be recalled within the next year or two.
 
 
 27
 We believe it is clear that the NLRB analogy would apply only to cases involving reasonable expectation of employment in the near future. Plaintiffs, therefore, do not meet the standard from the NLRB analogy of what constitutes "reasonable expectation of recall" or reemployment. Therefore, we conclude that plaintiffs were not involved in a "temporary layoff" as a matter of law. Furthermore, plaintiffs, under these undisputed circumstances, have no "reasonable expectation of recall." We need not make the analysis used by the district court in considering the five NLRB factors mentioned in any further detail.
 
 
 28
 We, accordingly, AFFIRM the decision of the district court for all defendants on appeal.
 
 
 
 [1]
 This Act will be referred to herein as the WARN Act
 
 
 [2]
 Mine 29 is in bankruptcy. The case has been stayed as to this defendant
 
 
 [3]
 The termination occurred as a consequence of a United Mine Workers strike at Mine 29, according to plaintiffs' brief, in which they make reference to alleged subsequent Jackal and Sidewinder use of non-union labor at the mine
 
 
 [4]
 Corpus Juris Secundum defines "employee" similarly; "meaning one who performs services for another for hire...." 30 C.J.S. Employee § 673 (1965). See also Meyer Dairy v. NLRB, 429 F.2d 697, 701 (10th Cir.1970)
 
 
 [5]
 "More commonly, [an employee is] one having a fixed tenure or position, or some permanent employment or position; one in constant and continuous service; one who gives his whole time and services to another." 30 C.J.S. Employee §§ 674-75
 
 
 [6]
 Atlas Metal Spinning Co. v. NLRB, 266 N.L.R.B. 180 (1983), involved a year-to-year layoff and recall of "all laid-off employees" due to a "cyclical pattern" of the employer's business. The Board's opinion noted that plaintiffs had "[a] reasonable expectancy of recall in the near future." (Emphasis added). In Allstate Manufacturing, 236 N.L.R.B. 155 (1978), also cited by plaintiffs, two of five employees laid off were asked to return to work within a month, thus others were deemed to have a reasonable expectation of reemployment. In Data Technology Corp., 281 N.L.R.B. 1005 (1986), probationary employees were involved and temporary layoffs were deemed by the employer to be those "up to 2 weeks' duration." The opinion contained the following statement:
 The Board has traditionally held that laid-off employees are eligible to vote in a Board-conducted representation election only if they have a reasonable expectancy at the time of the election of being recalled in the near and foreseeable future. Lennox Industries, 250 NLRB 58 (1980); Allied Products Corp., 220 NLRB 634 (1975).
 
 
 [281]
 N.L.R.B. 1005
 
 
 [7]
 This worker, Randy Burke, conceded that when recalled he was given no guaranty about the permanency of the recall