**Steven Scott KILDEA, et al.,
Plaintiffs–Appellees,**

v.

**ELECTRO–WIRE PRODUCTS,
INC., Defendant–Appellant.**

**No. 96–1891.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 30, 1998.

Decided May 13, 1998.

---

Patrick J. Marutiak (argued and briefed), Owosso, MI, for Plaintiffs–Appellees.

James P. Murphy, Francis J. Newton, Jr. (argued and briefed), Berry Moorman, Detroit, MI, for Defendant–Appellant.

Before: RYAN and SILER, Circuit Judges; HOOD, District Judge.[*]

## OPINION

HOOD, District Judge.

In this action brought under the Worker Adjustment And Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (WARN Act), the defendant-appellant, Electro–Wire Products, Inc. (Electro–Wire), appeals the decision of the district court granting judgment for the plaintiffs-appellees, some of its former employees.

The crux of this case centers on who is an "affected employee" under the WARN Act. The WARN Act provides,

An employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order (1) to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee; and (2) to the State dislocated worker unit ... and the chief elected official of the unit of local government within which such closing or layoff is to occur.

29 U.S.C. § 2102(a).

Analyzing the above provision, the district court held that the plaintiffs[1] were entitled to notice when Electro–Wire closed its plant. Electro–Wire now appeals that decision, claiming that the district court erred in finding that the plaintiffs were "affected employees" within the meaning of the WARN Act, that the WARN Act is constitutional, and that Electro–Wire was not entitled to a reduction in damages. We affirm in part and reverse in part.

## I.

The plaintiffs were all employees of Electro–Wire at its facility in Owosso, Michigan. The Owosso plant manufactured electrical wiring harnesses which it sold to automotive manufacturers. Thus, the Owosso plant was dependent on the automotive industry for its livelihood.

Although the auto industry suffered a down swing in sales in 1989, Electro–Wire had hired a number of people at its Owosso plant in the summer of 1989. Such hiring stemmed from Electro–Wire's contract with Ford Motor Company to produce heavy truck (401) harnesses. Electro–Wire knew, however, that this work was temporary as Ford and Electro–Wire had agreed that the 401 harness would eventually be made at a plant in Kentucky, closer to Ford's truck plant. Notwithstanding this, Electro–Wire hired these individuals on a permanent basis, but informed the work force that layoffs would likely occur due to the temporariness of the 401 harness production.

As expected, such layoffs did occur. Even so, the Owosso plant management believed

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1. The plaintiffs are a class of employees who were permanently hired by the defendant, but eventually were laid off indefinitely due to a reduction in production needs.

that the Owosso plant would remain in production, as the Owosso plant also produced other forms of automotive harnesses, and over the years, different production lines had come and gone.

Looking to the future, management thought air bag production would be the next major item the plant would supply, especially since Electro–Wire was already using some of its work force to produce air bag harnesses for TRW, who then supplied such harnesses to Ford Motor Co. Unfortunately, in September of 1989, TRW reduced its purchases from the Owosso plant, and in December of 1989, TRW further curtailed its purchases due to TRW's own loss of Ford's business. Again, Owosso plant employees were laid off.

Notably, however, such layoffs did not concern management; layoffs had been a part of life at the Owosso plant throughout the years due to the nature of its business. In fact, because of volatile production needs, Electro–Wire had implemented a seniority policy which determined who would be laid off and who would be recalled. This policy allowed employees to retain their seniority status even when laid off. Such seniority was only lost if the employee quit, was discharged, or was laid off for a period of time equal to the lesser of one year or length of service since the employee's most recent date of hire.

In the fall/winter of 1989, due to the above-described declining production needs, the plaintiffs were laid off. The plaintiffs were put on indefinite leave, which meant that their fringe benefits were taken away.[2] However, the plaintiffs believed, as in the past, they would eventually be recalled. Such was not the case.

During late 1989, the Owosso plant began having more difficulties, and no new work was being scheduled for the 1991 automotive year. Although Electro–Wire attempted to obtain other harness production business, it was unable to do so. Due to its declining production in December of 1989, Electro–Wire began considering closing the Owosso plant.[3] However, this consideration was not communicated to the work force or management at the Owosso plant. In January of 1990, the decision was finalized, and management was then informed that the Owosso plant would close down permanently on April 2, 1990.

On January 31, 1990, having consulted counsel, Electro–Wire notified all "active" employees of the impending April 2nd shutdown, as required by § 2102(a)(1) of the WARN Act. Electro–Wire, however, did not inform the plaintiffs of such shutdown. The plaintiffs sued, contending that they should have been given notice as well.

Initially, Electro–Wire moved for dismissal, claiming that the plaintiffs were not "affected employees" as defined in the WARN Act, and therefore, the plaintiffs were not entitled to notice. Looking to this Court for guidance, the district court denied the motion. The district court held that the plaintiffs could sustain the action if they could prove that they had a "reasonable expectation of recall," as set forth in *Damron v. Rob Fork Mining Corp.*, 945 F.2d 121 (6th Cir. 1991).

A bench trial was eventually held on whether Electro–Wire had violated the WARN Act by failing to provide the required sixty-days notice to the plaintiffs. After hearing testimony and reviewing the evidence presented, the district court determined that the plaintiffs should have been notified of the impending shutdown, as the plaintiffs were "affected employees" under

---

**2.** Electro–Wire makes much ado about whether the plaintiffs were laid off "temporarily" or "indefinitely." While the terminology does connote a difference in time, the bottom line is that the plaintiffs, because of industry practice and Electro–Wire's history of layoffs and recalls, were not considered terminated, but instead had an expectation of being recalled in the future.

**3.** Around this same time, Owosso plant manager, Robert Peters, started asking his superiors at Electro–Wire's corporate headquarters about the future of the Owosso plant. He received no answers, but became personally concerned about the future of the plant. Yet, this concern was not communicated to the work force. In fact, during this time, many of the laidoff workers began asking about when they might be recalled; they were repeatedly told by management that management "did not know" when, but that "hopefully, you will be coming back."

the WARN Act.[4] The district court also held that the WARN Act was not unconstitutional and that Electro–Wire was not entitled to a reduction of damages for good faith compliance with the Act. Electro–Wire has now appealed the district court's decision.

## II.

■ The Court reviews a district court's conclusions of law de novo and findings of fact for clear error. *Duncan v. Coffee County, Tenn.*, 69 F.3d 88, 92 (6th Cir.1995). In the case at hand, the district court determined that the plaintiffs, who had been laid off but who had retained their seniority rights, were "affected employees" under the WARN Act and should have been provided with notice that the Owosso plant was closing on April 2, 1990. In failing to give the plaintiffs notice, the district court held that Electro–Wire had violated the WARN Act and thus was liable to the plaintiffs for back pay for the sixty-day time period in which they did not receive notice.

■ Based on the standards of review set forth above, Electro–Wire argues that the district court (1) erred in finding that Electro–Wire violated the notice requirement of the WARN Act because the plaintiffs were "affected employees" and (2) erred in determining that the plaintiffs had a "reasonable expectation of recall." Electro–Wire maintains that the WARN Act's notice provision is not so broad as to include laidoff employees, as these employees have already experienced an employment loss by being laid off. Although laidoff employees can be considered "employees" when determining who an "employer" is, Electro–Wire contends that such "employees" do not come within the confines of employees who should be given notice.

In furtherance of its argument, Electro–Wire submits that the WARN Act applies two separate tests: a coverage test and a notice test.[5] The coverage test is used to decide who is an "employee" for the purposes of determining who is an "employer" under the WARN Act; whereas, the notice test is used to decide who is an "affected employee" for the purposes of determining who gets sixty days notice of a plant closing or mass layoff. Electro–Wire contends that the notice test is not as broad as the coverage test, in that it does not include laidoff employees like the plaintiffs, and it does not employ a "reasonable expectation of recall" analysis, which is utilized within the coverage test. Electro–Wire reasons that the district court erred when it used the "reasonable expectation of recall" analysis in determining who should receive notice of a plant closing.

The plaintiffs, on the other hand, contend that the district court used the appropriate analysis in determining what employees should have gotten notice of the Owosso plant closing. The plaintiffs argue that they do come within the meaning of "affected employees" in that they had a "reasonable expectation of recall."

The plaintiffs submit that it would be incredulous to allow employers not to give notice to laidoff employees with such expectation, since an employer could lay off 49 workers one day and then announce a plant closing on the next day—effectively getting around the fifty-worker requirement set forth in § 2101(a)(2) of the WARN Act. Also, the plaintiffs point out that including laidoff employees within the meaning of the term "affected" is consistent with the remedial nature of the statute, especially since laidoff workers are deemed "employees" for pur-

4. The district court found that all of the laidoff hourly employees who retained their seniority rights as of January 31, 1990, had a reasonable expectation of recall, and, therefore, were entitled to receive the notice required under the WARN Act. Further, the district court found that salaried employees, whose layoff had not exceeded, as of January 31, 1990, the lesser of twelve months or the length of their employment with Electro–Wire up until the commencement of their layoff, were entitled to receive notice as well. In contrast, the district court found that

those workers who were fired or voluntarily quit did not have a reasonable expectation of recall and thus did not sustain an employment loss as a result of the plant closing and were not entitled to notice.

5. Electro–Wire points out that the coverage test is not at issue in this appeal because Electro–Wire has stipulated that it is an employer under the WARN Act. Therefore, Electro–Wire maintains that only the notice test is applicable.

poses of determining if an employer is an "employer" within the meaning of the Act. The Court agrees.

The WARN Act provides that an employer shall not close down a plant without giving the "affected employees" sixty days notice. 29 U.S.C. § 2102(a)(1). "Affected employees" are employees "who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." 29 U.S.C. § 2101(a)(5). "Employment loss" is defined as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period." 29 U.S.C. § 2101(a)(6).

█ It is clear that the purpose of the WARN Act is to ensure that "workers receive advance notice of plant closures and mass layoffs that affect their jobs." *Marques v. Telles Ranch, Inc.*, 131 F.3d 1331, 1333 (9th Cir.1997). This Court has already determined that temporarily laidoff employees with a "reasonable expectation of recall" are considered "employees" under the WARN Act. *See Damron*, 945 F.2d at 123. It makes sense, then, that such "employees," who have a reasonable expectation of recall, would experience a job loss when a plant is shutdown and thus would be considered "affected employees" under the WARN Act.[6] *See Marques*, 131 F.3d at 1335; *Jones v. Kayser–Roth Hosiery, Inc.*, 748 F.Supp. 1292, 1298 (E.D.Tenn.1990); *see also Bradley v. Sequoyah Fuels Corp.*, 847 F.Supp. 863, 868 (E.D.Okla.1994).

Electro–Wire, however, stresses that the tests for determining whether a worker is an "employee" under the Act and whether a worker is an "affected employee" are differ-

ent and should not be intermingled. In support, Electro–Wire notes that the WARN Act includes within the definition of "employee" individuals who are working in a temporary facility and individuals who are on strike or locked out. *See* 29 U.S.C. § 2103(1)-(2). Such individuals, however, are exempted from the notice requirement. Thus, submits Electro–Wire, it is clear that the definition of "employee" is broader than the definition of "affected employee." The Court does not agree.[7]

In exempting certain "employees" from the notice requirement, Congress exhibited its feeling that a specific exemption was needed to exclude any "employee" from the WARN Act, i.e., all "employees" are also considered "affected employees" under the Act if they will suffer an employment loss as a result of a plant closing. Notably, when specifically excluding such employees, Congress did not exclude laidoff employees. Based on the statute, then, laidoff employees (who are considered "employees" under the Act) would also be "affected employees" when they will suffer an employment loss as a result of a plant closing. In other words, when it is shown that they have a "reasonable expectation of recall," a laidoff employee is an "affected employee." To rule otherwise would make Congress' exclusion superfluous. *See Saxion v. Titan–C–Manufacturing, Inc.*, 86 F.3d 553, 559 (6th Cir.1996)(quoting *United Steelworkers of America, AFL–CIO–CLC v. North Star Steel Co., Inc.*, 5 F.3d 39, 42 (3d Cir.1993)).

Electro–Wire makes one last argument. Electro–Wire contends that, even if you assume that the "reasonable expectation of recall" analysis should be used, the district court misapplied the analysis by using a purely subjective analysis, rather than an objective one. The Court both agrees and disagrees.

---

6. Since the Act clearly states that an "affected employee" is one who will likely suffer an employment loss as a result of a plant closing or mass layoff, it is logical that an "affected employee" must be an "employee" in order to suffer an employment loss. The regulations define an "employee" as an individual who is either (1) actively working or (2) temporarily laidoff, or on leave, with a reasonable expectation of recall. *See* 20 C.F.R. § 639.3(a)(1); *Damron*, 945 F.2d at

123. Thus, it follows that a laidoff employee who has a "reasonable expectation of recall" would suffer an employment loss as a result of a plant closing.

7. In fact, the Court finds Electro–Wire's argument to support the district court's determination that laidoff workers with a "reasonable expectation of recall" are "affected employees."

■ The Court agrees with Electro–Wire that the appropriate analysis is an objective one. The Court emphasizes that the question is not whether the employees in the case at hand believed they had a fairly good chance of being recalled. And correspondingly, the employer is not required to determine which laidoff employees "truly believed" they would be recalled. Rather, the standard is whether a "reasonable employee," in the same or similar circumstances as the employees involved in the case at hand, would be expected to be recalled.

■ The Court, however, disagrees with Electro–Wire that the district court failed to use such objective approach. The district court clearly looked at objective factors when determining if the plaintiffs had an expectation of recall.

As the plaintiffs point out, the district court used the approach taken by the Sixth Circuit in *Damron* when assessing whether the plaintiffs had a "reasonable expectation of recall." *Damron*, 945 F.2d at 124. The district court looked at the five criteria used by the NLRB, *see id.*, and determined that the plaintiffs had a "reasonable expectation of recall."

The district court found that the past practice of Electro–Wire, and the industry as a whole, was to employ individuals permanently, but lay them off temporarily when production levels were low. Such individuals regularly were recalled and retained their seniority status throughout their layoff. Additionally, the Court found that even the Owosso plant management assumed that the more recent layoffs, which involved the plaintiffs, were routine and would eventually lead to recall when production levels increased.[8]

The testimony presented at trial supports the district court's findings. Testimony showed that both the employees and management at Owosso assumed that the plant would begin producing more air bag harnesses and such production would utilize the laidoff employees. Testimony showed that no one thought that the Owosso plant was on the verge of closing, having gone through rough times during the eighteen years the plant had been open. In fact, the evidence showed that the past practice had been to take out old lines and put in new lines.[9]

Thus, looking at the history of layoffs, the past practice of recalling laidoff employees and the acknowledgment by management that they considered the layoffs in the fall/winter of 1989 to be routine and expected the laidoff employees to be recalled before losing their seniority status, the district court determined that the employees had a "reasonable expectation of recall":

> From all the evidence in this case and considering the past experience of the defendant and its future plans, the circumstances of the layoff including the information communicated by management as to the likelihood of recall, ... the expected length of the layoff and industry practice, I conclude that from the employee's point of view, the layoff in November and December, 1989 was no different than previous layoffs over the 18 years of plant operation. While the period of recall may have varied, recall was expected unless there was a loss of seniority during the layoff. While some laidoff employees may have sensed something during the last several months of employment leading them to seek information concerning the future, they were in no way advised that the layoff was in any way different from others, and

---

8. In a September meeting with plant employees, plant manager, Robert Peters, advised the employees that the plant was losing some lines, but was replacing them with air bags and getting the old "78" line back. He told the plant employees that while some of them would be laid off as each line went down, they should not worry because there would be enough work for everyone to get back to work.

9. One plant employee, Lorry Luchenbill, along with several of her relatives, testified that the

pre-Christmas layoff was no different than prior years which had been followed by recalls. Penny Renka, an employee who had worked for Electro–Wire on a number of occasions over the years, testified that at a meeting before a layoff, Robert Peters stated that some employees would be laid off since the 401 harness line was leaving sooner than expected, but that they should not worry because air bags were the wave of the future, and the plant would have work. Numerous other employees testified similarly.

that even though recall could not be predicted, it was nevertheless expected.

Although such factors do envelop the subjective views of the employees and management, they also provide objective criteria of past history and practice. Consequently, the district court's reliance on these objective factors was proper and its findings were not in error. *See id.*

### III.

 Even if the district court did not err in finding the plaintiffs to be "affected employees," Electro–Wire additionally argues that the WARN Act is unconstitutional. This court's review of the constitutionality of a statute is de novo. *See, e.g., United States v. Smith,* 73 F.3d 1414, 1416 (6th Cir.1996)(discussing constitutionality of sentencing statutes).

First, Electro–Wire argues that the "WARN Act is void for vagueness because it does not provide standards for determining which laidoff workers, if any, are entitled to plant closing notice." Second, Electro–Wire submits that the term "affected employee" is bereft of any meaningful standard and thus makes men of common intelligence guess at its meaning. *See Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2296–97, 33 L.Ed.2d 222 (1972). Lastly, Electro–Wire contends that the WARN Act makes the employer guess because it appears to make the notice requirement subjective and gives no time-frame for what constitutes a "reasonable expectation of recall."

The plaintiffs point out that the WARN Act has withstood constitutional scrutiny in the past. They argue that there is no merit to the defendant's allegations that the term is vague, since the statute, as well as the regulations, give an analysis of who is considered an "affected employee." The Court agrees.

 The United States Supreme Court has noted that "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned,* 408 U.S. at 110, 92 S.Ct. at 2300. Since "[t]he classification of a federal statute as void for vagueness is a significant matter ... [,] '[e]very reasonable construction must be resorted

to, in order to save a statute from unconstitutionality.' " *Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101, 1105 (6th Cir.1995)(quoting *Chapman v. United States,* 500 U.S. 453, 464, 111 S.Ct. 1919, 1926–27, 114 L.Ed.2d 524 (1991)), *cert. denied,* 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 189 (1996).

While the WARN Act does not spell out meticulously who is deemed an "affected employee," the Act, its regulations and case law provide meaningful guidelines. *See Columbia Natural Resources, Inc.,* 58 F.3d at 1108–09; *see also United States v. Haun,* 90 F.3d 1096, 1101 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 691, 136 L.Ed.2d 614 (1997). The Act clearly states that an "affected employee" is one who will likely suffer an employment loss as a result of a plant closing or mass layoff, and that an employment loss is an employment termination. The Act also relays that an "employee" is an individual who is either (1) actively working or (2) temporarily laidoff, or on leave, with a "reasonable expectation of recall." *See* 20 C.F.R. § 639.3(a)(1); *Damron,* 945 F.2d at 123. Within these definitions, then, an employer can conclude that an "affected employee" must be an "employee," and therefore, a laidoff employee with a "reasonable expectation of recall" is entitled to notice.

From the above analysis, it is clear that the term "affected employee" is subject to reasonable construction and gives adequate notice to an employer. *See Haun,* 90 F.3d at 1101; *Columbia Natural Resources, Inc.,* 58 F.3d at 1108. Moreover, whether an employee has a "reasonable expectation of recall" is governed by an objective standard and, thus, is no less ascertainable than any other legal doctrine that relies on objective reasonableness. Hence, the statute cannot be considered void for vagueness and passes constitutional muster. *See Grayned,* 408 U.S. at 110–14, 92 S.Ct. at 2299–2302; *Columbia Natural Resources, Inc.,* 58 F.3d 1101, 1108–09.

### IV.

 Under § 2104(a)(4) of the WARN Act, an employer is entitled to a reduction of

its damages where it can show that "the act or omission that violated this chapter was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this chapter." In the case at hand, it is unclear whether the district court found that Electro–Wire had acted in good faith.[10] What is clear, is that the district court determined that Electro–Wire's decision to not notify the plaintiffs was unreasonable; and therefore, Electro–Wire was not entitled to any reduction of damages under this provision. Thus, because the district court's determination rested on a legal conclusion, and not a factual finding, the Court reviews the district court's determination de novo. *Duncan,* 69 F.3d at 92.

Notably, in arguing whether the district court's determination should be upheld, the parties used the wrong standard. Both Electro–Wire and the plaintiffs discuss the district court's findings and whether they were in error. In reality, what the parties dispute is not the district court's findings of fact, but its interpretation of the facts. Thus, the parties' arguments must be viewed in this light.

Arguing that the district court erred in its decision not to reduce its damages, Electro–Wire submits that it showed both a subjective intent to comply and an objective reasonableness in determining that the plaintiffs were not entitled to notice. In support of its contention that it acted in good faith, Electro–Wire highlights two essential facts. First, Electro–Wire stresses that it gave notice to all employees it believed to be "affected." Second, Electro–Wire notes that after notice was given it worked with the Gover-

nor's office to set up a workers' readjustment program in the plant.

Similarly, in support of its contention that it had reasonable grounds to believe that the plaintiffs should not receive notice, Electro–Wire highlights several more facts. First, Electro–Wire notes that the statute and regulations do not make it clear that a laidoff employee should receive notice. Second, Electro–Wire submits that its conclusion that people on layoff status had already experienced a loss, and therefore were not under the Act's provision at the time of the closing, was reasonable. Third, Electro–Wire again highlights the fact that it gave notice to all "active" employees, plus seven other employees on sick leave and workers' compensation leave, and that it gave the required notice to the Governor's office and City of Owosso. Fourth, Electro–Wire notes that it used the Governor's office's flow chart in determining who should receive notice. Last, Electro–Wire stresses that at the time the decision was made the WARN Act was newly enacted and little case law or legal commentary was available.

The plaintiffs argue, however, that the district court's findings should not be disturbed on appeal because the district court was not wrong in finding that the defendant did not act in good faith. A lack of good faith was shown, argues the plaintiffs, when the executive vice-president, Bruce Landino, made the decision to close the Owosso plant without inquiring into circumstances of the layoff situation at the plant. Likewise, the fact that the decision to notify employees was made in one day, without having explored such facts, evidences a lack of good faith.

---

**10.** In its opinion, the district court states,

 While Mr. Lauer [Electro–Wire's counsel] may have acted in good faith in his attempt to notify all employees to whom notice was due, the corporation itself was in large part responsible for development of the situation in which none of the laid-off [sic] employees could have expected that they would not be recalled.

 . . .

 Mr. Lauer was given only one day's notice to determine the employees entitled to notice of the plant closure, during which time he defined that group to include only those employees actively working or on sick leave. This conclusion, while perhaps made in good faith

by Mr. Lauer, was not a reasonable one entitling defendant to a reduction in liability.

 . . .

 While it may have been reasonable to believe that workers laid off in excess of six months would already have suffered an employment loss and were not entitled to notice of the plant closing, it was unreasonable to conclude that all laid-off [sic] employees regardless of duration were not "affected employees" under the Act. The categorical exclusion of all laid-off [sic] employees was not reasonable. Therefore, regardless of any good-faith effort by Mr. Lauer, defendant is not entitled to reduction of liability for its violation of the Act.

While it is true that the decision to give notice was done within a twenty-four hour period, the Court acknowledges that Electro–Wire consulted with counsel who both examined the notice provisions of the WARN Act and utilized material it had received from the Governor's office. In looking at the statute,[11] counsel determined that (1) the plaintiffs had already suffered an employment loss when they were laidoff and (2) that they had no "reasonable expectation of recall" since they had been laidoff indefinitely with no time-expectation of when, and if, they would be recalled.

The Court cannot say that such a reading of the statute was unreasonable.[12] It is clear that Electro–Wire gave **all** of its actively working employees, plus its employees on sick leave and workers' compensation, notice. It also gave the Governor's office notice, as required by the Act, and worked with the Governor's office in setting up a readjustment program at the plant.

Looking at these actions, the Court finds that the district court's conclusion that Electro–Wire acted unreasonably when it decided not to give the plaintiffs notice is in error. Based on the little case law existing, and on the imprecise wording of the statute, Electro–Wire's decision not to give notice to the plaintiffs was reasonable. Whether it was in good faith remains to be determined by the district court, and, upon remand, if the district court finds that Electro–Wire acted in good faith, the district court may, in its discretion, reduce Electro–Wire's damages under § 2104(a)(4) of the WARN Act. *See Frymire v. Ampex Corp.,* 61 F.3d 757, 768–69 (10th Cir.1995), *cert. dismissed,* 517 U.S. 1182, 116 S.Ct. 1588, 134 L.Ed.2d 685 (1996); *cf. Saxion,* 86 F.3d at 561–62; *Carpenters Dist. Council of New Orleans v. Dillard Dept. Stores,* 15 F.3d 1275, 1287–88 (5th Cir. 1994).

Accordingly, we **AFFIRM** the district court's determination that Electro–Wire violated the notice requirement, 29 U.S.C. § 2102(a)(1), when it failed to give the plaintiffs notice. Likewise, we **AFFIRM** the district court's determination that the statute is not unconstitutional. However, we **REVERSE** the district court's holding that Electro–Wire did not act within reason, and we **REMAND** this matter back to the district court to determine if the good faith exception will affect the liability of the company through mitigation of damages.

---

**11.** The Court agrees with Electro–Wire that little case law existed on this issue. In fact, until now, this Court had yet to address this exact issue.

**12.** In fact, the Court agrees with Electro–Wire that the provision does leave room for Electro–Wire's interpretation of what constitutes an "affected employee."