**MICHIGAN REGIONAL COUNCIL OF CARPENTERS, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, Plaintiffs,**

v.

**HOLCROFT L.L.C., a Delaware limited liability company, AFC–Holcroft L.L.C., a Michigan limited liability company, Madison Capital, an Ohio Corporation, and Atmosphere Group, Inc., a Michigan Corporation, jointly and severally, Defendants.**

No. 00–73803.

United States District Court,
E.D. Michigan,
Southern Division.

March 5, 2002.

Lynn F. McGuire, Novara, Tesija, Southfield, MI, for plaintiffs.

James M. Gecker, Katten, Muchin, Chicago, IL, Gregory V. Murray, William E. Altman, Vercruysse, Metz, Bingham Farms, MI, for defendants.

### OPINION & ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION

ROBERTS, District Judge.

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Reconsideration of the July 31, 2001 Opinion and Order granting Defendants' and denying Plaintiffs' cross-motions for summary judgment.[1] In the Opinion and Order, the Court found that Defendant–Holcroft was not required to give notice to its employees pursuant to the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2101 et seq, because fewer than fifty employees suffered an "employment loss" within the thirty-day period preceding and following the closing of Defendants' business. In addition, the Court found that employees laid off in two separate periods could not be aggregated to meet the threshold requirement for WARN Act liability. Because the laid off employees in this case may have suffered an employment loss within the applicable period for WARN Act liability, the Court finds that it erred in granting Defendants' summary judgment. Accordingly, the Court vacates its prior Judgment and reinstates this action.

## II. BACKGROUND

The relevant facts were established in the Court's July 31, 2001 Opinion and Order. There, the Court made several pertinent findings, including the following: (1) that between October and November of 1999, thirty-two employees were involuntarily laid off by Holcroft due to a decrease in business and the failure to secure several manufacturing contracts; (2) that between January and February of 2000 eleven employees were involuntarily laid off; (3) that on March 31, 2000, thirty-five employees were involuntarily laid off when Holcroft shut down its manufacturing operations; and (4) that the employees laid off prior to March 31, 2000 suffered employment losses at the commencement of their layoffs rather than when Holcroft's assets were sold.

Based on these findings, the Court held that Holcroft was not required to give notice pursuant to the WARN Act because fewer than fifty employees had suffered

---

1. Plaintiffs represent the manufacturing employees of Holcroft. Defendants are Holcroft, the employer, Madison Capital, an equity firm that owned Holcroft's assets and managed its affairs, Atmosphere Group, the purchaser of Holcroft's assets, and AFC–Holcroft, the subsidiary of Atmosphere created to acquire Holcroft's assets.

employment losses thirty days preceding, and following, the shut down of Holcroft's plant on March 31, 2000.[2] In addition, the Court held that the 1999 layoffs could not be aggregated with the layoffs that occurred on March 31, 2000 to reach the threshold number of employment losses to trigger WARN Act liability. The Court, therefore, granted Defendants' and denied Plaintiffs' motions for summary judgment. On August 10, 2001, Plaintiffs' filed a Motion for Reconsideration.

## III. ANALYSIS

### A. Standard for Reconsideration

Local Rule 7.1(g)(3) states:

**Grounds.** Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable impli-

cation. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

### B. Employees Laid Off in 1999

▆▆▆▆ The Court erred in finding that the employees laid off in October and November of 1999 suffered employment losses at the commencement of their layoffs. This finding was critical because it placed the date of their employment losses outside the thirty day period from the time Holcroft shut down its manufacturing operations on March 31, 2000. This occurrence resulted in the "layoffs" of 35 additional employees.[3] There is no dispute that without aggregation the 1999 layoffs and the shutdown on March 31, 2000, are alone insufficient to trigger the WARN Act.[4] The Court's finding also placed the

---

2. The parties do not dispute that upon the March 31, 2000, sale of assets to the Atmosphere Group, Holcroft's manufacturing operations were effectively shut down. This is only considered a plant closing under the WARN Act if the threshold number of employment losses occur as the result of the shutdown. A "plant closing" is defined as "the permanent or temporary shutdown of a single site of employment... if the shutdown results in the employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees..." 29 U.S.C. § 2101(a)(2). Alternatively, Plaintiffs argued that Holcroft's actions also constituted a mass layoff under 29 U.S.C. § 2101(a)(3). Because there were fewer than 150 manufacturing employees at Holcroft during the relevant period, the threshold level of 50 employment losses would trigger either a plant closing or a mass layoff. However, the definition of mass layoff excludes a reduction in force resulting from a plant closing. 29 U.S.C. § 2101(a)(3)(A). Therefore, the Court will analyze the action only as a plant closing, recognizing that it makes no practical difference in this case.

3. An employer's characterization of an employment action is not always determinative

of whether an employment loss occurred. The Department of Labor noted in Final Rule 16042, that:

> "[the Department] interprets the statutory terms 'termination' and 'layoff' in section 3(a)(6) to be distinguishable and to have their common sense meanings. Thus, for the purposes of defining 'employment loss', the term 'termination' means the permanent cessation of the employment relationship and the term 'layoff' means the temporary cessation of that relationship."
> 54 Fed.Reg. 16042, 16047 (interpreting the definitions in 20 C.F.R. § 639.3)

Thus, despite Holcroft's characterization of these employees as "laid off", under the given facts they are considered terminated for purposes of the WARN Act. The facts indicate that the purchaser of Holcroft's assets, Atmosphere Group, had no intention of hiring Holcroft's manufacturing employees. Further, there is no indication that these employees were offered transfers to other positions by either Holcroft or Atmosphere Group.

4. The WARN Act only requires employers to give notice prior to ordering a plant closing or a mass layoff. 29 U.S.C. § 2102. To con-

two groups of employment losses outside of the ninety day period in which employment losses can sometimes be aggregated to meet the threshold numbers to trigger the WARN Act.[5] Because correcting the Court's error on this finding will result in the denial of Defendants' motion for summary judgment, it is an appropriate ground for reconsideration pursuant to LR 7.1(g)(3).

A layoff is not automatically considered an employment loss under the WARN Act. Section 2101(a)(6) defines what employment actions result in employment losses. Under this definition, only layoffs *exceeding* 6 months are considered employment losses.[6] Layoffs for shorter periods of time, by themselves, do not constitute employment losses. An employee laid off for 6 months or any shorter period of time can, of course, suffer an employment loss if he or she is terminated, other than for cause, while on layoff.

In considering the cross-motions for summary judgment, the Court found that the employees laid off for fewer than 6 months did not suffer employment losses either by virtue of letters they received from Holcroft that it saw no possibility of their being recalled or by the permanent shut down of Holcroft's manufacturing operations. Rather, the Court found that laid off employees suffer employment losses only at the commencement of their layoffs. The Court's finding was based, in part, on a provision in the Department of Labor's Final Rules on the WARN Act, which states:

A commenter questioned whether employees laid off for an indefinite period (i.e., where the employer expects to recall them but does not know whether their recall will occur before or after 6 months) are automatically to be considered as experiencing an employment loss at the time of the layoff. In this situation, the layoff is not automatically deemed an employment loss. If the layoff lasted for more than 6 months, the workers would experience an employment loss, would be counted toward the trigger level for the plant closing or mass layoff of which their individual layoffs were a part, and would have been entitled to notice if the layoff or closing met coverage thresholds. Since an employment loss begins with the layoff and since notice is due 60 days in advance, a prudent employer wishing to avoid potential liability would provide notice to the workers at least 60 days prior to their layoff unless it is certain that the layoff will not exceed 6 months.

54 Fed Reg 16042,16049 (April 20, 1989)

The Court was persuaded by Defendants' argument that the last sentence of this provision clearly demonstrates that the employment loss for a laid off employee occurs at the commencement of a layoff period. In reconsidering this provision in its entirety, however, the Court is persuaded that it is inapplicable to the present facts. In fact, this provision undermines Defendants' argument. The provision warns employers conducting layoffs of indefinite periods that, in the event the layoff exceeds 6 months, the employee will suffer an employment loss at the commencement of the layoff. Thus, it warns

---

stitute either a "plant closing" or "mass layoff" 50 employees, at a minimum, must suffer an employment loss within the requisite time period. See 29 U.S.C. § 2101(a)(2) & (3).

**5.** 29 U.S.C. § 2102(d). This "aggregation rule" will be addressed in Section C, *infra*.

**6.** 29 U.S.C. § 2101(a)(6) states that an employment loss is, "...(A) an employment termination, other than discharge for cause, voluntary departure, or retirement, (B) *a layoff exceeding 6 months*, or (C) a reduction in hours of work of more than 50 percent during each month of any 6–month period." (Emphasis added).

"prudent employers" to give prior notice to their employees prior to commencing a layoff of an indefinite period if they wish to avoid WARN Act liability. In the present case the employees were laid off for fewer that 6 months when Holcroft shut down its manufacturing operations. As a result, they did not suffer employment losses by virtue of their layoff. Further, in accordance with the above provision they are not deemed to have "automatically" suffered an employment loss at the commencement of their layoff. The Court, therefore, erred in relying on this provision in making a finding to the contrary.

Similarly, the Court erred in finding that 20 C.F.R. § 639.4(b) supported Defendants' position that laid off employees suffer an employment loss only at the commencement of their layoff.[7] This "business circumstances" exception to the general notice provision of 29 U.S.C. § 2102 states:

> [a]n employer who has previously announced and carried out. a short-term layoff (6 months or less) which is being extended beyond 6 months due to business circumstances ... not reasonably foreseeable at the time of the initial layoff is required to give notice when it becomes reasonably foreseeable that the extension is required. A layoff extending beyond 6 months for any other reason shall be treated as an employment loss from the date of its commencement.[8]

Defendants argued that this "business circumstances" exception does not apply because the requisite number of employment losses had not been reached to trigger the WARN Act. In most situations the employer would benefit under § 639.4(b) because it would be excused for having failed to give notice 60 days prior to the commencement of the layoff if the circumstances necessitating the extension of the layoff were reasonably unforeseeable. Defendants position, however, is that since this exception does not apply, the default rule stated in the last sentence of this provision controls; therefore, the commencement of the layoff is also the date an employment loss occurs.[9] Nevertheless, as with the analysis of the Final Rule discussed above, the layoffs in the present case did not extend beyond 6 months before Holcroft shut down its manufacturing operations. The Court, therefore, erred in finding that the employees suffered an employment loss at the commencement of their layoff based on this provision.

The 6th Circuit has recognized that laid off employees with a reasonable expectation of recall suffer an employment loss as the result of a plant closing. *Kildea v. Electro–Wire Products, Inc.*, 144 F.3d 400, 405 n. 6 (6th Cir.1998). In *Kildea*, the plaintiffs were manufacturing employees who had been laid off in the fall and early winter of 1989 due to the employer's declining production needs. 144 F.3d at 403. By January, it had become clear to the

7. The Court cited 54 Fed Reg. 16042, 16052 (April 20, 1989), which was later codified under 20 C.F.R. § 639.4(b).

8. An employer is usually required to serve notice to affected employees or their representatives 60 days prior to ordering a plant closing or mass layoff. 28 U.S.C. § 2102(a).

9. Defendants may be arguing that the plant closing qualifies as a layoff extending for "any other reason" under the last sentence of

§ 639.4(b) and therefore the employees suffered employment losses at the commencement of their layoff. The regulations distinguish layoffs, however, from terminations. See FN 2, *supra*. The facts in the record illustrate that the Atmosphere Group had no intention of retaining Holcroft's manufacturing employees upon its purchase of Holcroft's assets. Thus, any "layoffs" resulting from the March 31, 2000 shut down of Holcroft's manufacturing operations must be characterized as terminations.

company that business was not likely to improve and plans to close the plant were formalized. *Id.* On January 31, 1990, management sent notice to the plant's employees that the plant would be closed on April 2, 1990, but did not notify the plaintiffs. *Id.* Plaintiffs then brought suit under the WARN Act, arguing that they, too, should have been provided notice. 144 F.3d at 403. After holding a bench trial, the district court found that plaintiffs should have been provided notice because they were "affected employees" under the WARN Act.[10] The 6th Circuit affirmed on this issue, holding that the district court used the proper objective test in determining whether the plaintiffs were "affected employees" by considering whether they had reasonable expectations of being recalled. 144 F.3d at 406–407. Because the plaintiffs had reasonable expectations of being recalled, the court held that they were affected employees and therefore entitled to notice under the WARN Act.

■ The determination of whether a laid off employee has a reasonable expectation of recall is made on an objective basis. *Kildea*, 144 F.3d at 406. The 6th Circuit has adopted criteria used by the National Labor Relations Board in determining whether a person on layoff is an employee under the National Labor Relations Act, in considering the same issue for WARN Act liability. *Damron v. Rob Fork Mining Corp.*, 945 F.2d 121, 124 (6th Cir. 1991) cited in *Kildea v. Electro–Wire Products, Inc.*, 144 F.3d 400, 406 (6th Cir. 1998). The court must consider:

(1) past experience of the employer;

(2) the employer's future plans;

(3) the circumstances of the layoff;

(4) expected length of the layoff; and

(5) industry practice.

*Damron*, 945 F.2d at 124.

Because neither Plaintiffs nor Defendants addressed this determination in their motions or briefs, the Court will not decide the issue in this motion for reconsideration.

In *Kildea*, a sufficient number of employment losses had taken place to constitute a plant closing without taking into account the laid off employees. Thus, the court only had to consider whether the laid off employees were entitled to notice. In the present case, the threshold number of employment losses to constitute a plant closing cannot be reached without including the laid off employees. This distinction does not, however, make the holding of *Kildea* inapplicable to the present facts. As stated in the regulations, workers on temporary layoff with a reasonable expectation of recall are considered employees.[11] Further, the definition of a "plant closing" looks only to whether a sufficient number of employees have suffered an employment loss within a 30–day period.[12] Therefore, if the employees in this case had reasonable expectations of being recalled, they are deemed to have suffered employment losses on March 31, 2000, when Holcroft shut down manufacturing operations at their plant and their losses should be counted in determining whether a "plant closing" had occurred. This finding is consistent with the definitions provided in the

---

10. The WARN Act only requires that employers give *affected employees* 60 days notice prior to ordering a plant closing or mass layoff. 29 USC § 2102. "Affected employees" are employees who may reasonably be expected to suffer an employment loss as the result of a plant closing or mass layoff. 20 C.F.R. § 639.3(e).

11. 20 C.F.R. § 639.3(a)

12. A "plant closing" is defined as "the permanent or temporary shutdown of a single site of employment... if the shutdown results in the employment loss at the single site of employment during any 30–day period for 50 or more employees excluding any part-time employees..." 29 U.S.C. § 2101(a)(2).

WARN Act as well as the court's holding in *Kildea.* Further, it is consistent with the purpose of the WARN Act, which is to provide sufficient notice of prospective job losses to workers so that they and their families have adequate transition time to find alternative employment or to obtain additional training. 20 C.F.R. § 639.1(a). There is little doubt that employees who hold reasonable expectations of being recalled also need advance notice of a plant closing so that they can secure other employment and additional training, if desired.

The Court also finds that in reconsidering the case law in accord with the holding of *Kildea,* the February 28, 2000 letter that Holcroft sent to the laid off employees may have transformed their layoffs into terminations. The Court cited *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277 (8th Cir.1996), for the rule that a notice to employees that their layoff is "expected to be permanent" does not constitute a termination because it leaves open the possibility of rehire. 78 F.3d at 1282. *Rifkin,* however, is distinguishable on several grounds. First, the February 28, 2000 letter, unlike the notices in *Rifkin,* was sent after the employees had been laid off for several months. Second, the February 28, 2000 letter stated that Holcroft saw "no possibility" of the employees being rehired, which would seem to effectively foreclose the employees' expectations of recall. Third, the fact that the laid off employees in *Rifkin* were subsequently rehired within six months was likely a factor in the court's decision that the notice itself did not constitute a termination. Thus, *Rifkin* does not provide the guidance the Court originally believed it did.

Further, the court's holding in *Marques v. Telles Ranch,* 131 F.3d 1331 (9th Cir. 1997) that a "loss of the expectation of recall cannot be considered an immediate 'employment loss' " is distinguishable. In *Marques,* seasonal agricultural workers received notices that they would not be rehired the following season two days after having received notices for their customary seasonal layoff. 131 F.3d at 1333. The workers argued that they suffered employment losses upon receipt of the second notice and were entitled to sixty days notice prior to that date. 131 F.3d at 1334. In rejecting this claim, the court found that since they could have reasonably expected to be recalled until the following season, they had not lost any tangible benefit of employment upon receipt of the notice of permanent layoff. 131 F.3d at 1334–35. In reconciling its holding with *Kalwaytis v. Preferred Meal Systems, Inc.,* 78 F.3d 117 (3rd Cir.1996), the court held that, unlike the employees in *Kalwaytis,* the employees in *Marques* could not point to any benefit of employment that they had lost upon receipt of the second notice since they received no benefits during their seasonal layoffs. *Id.*

█ In the present case, the employees had originally been told that their layoff would be temporary. Further, Holcroft's CEO testified that the laid off employees maintained their seniority rights while on layoff. Thus, while the employees in *Marques* could not have expected to have been recalled until the following season, the employees in the present case may have believed, at least until receipt of the February 28, 2000 letter, that they would be recalled at any time. If upon receipt of this letter the employees no longer had reasonable expectations of being recalled, this date could be considered the date they suffered a employment losses because they would no longer be considered employees under 20 C.F.R. § 639.3(a)(1). It is the practical effect of the employment action, not the employer's characterization of it, that controls.[13] Thus, receipt of the Feb-

---

**13.** See fn. 3, *supra.*

ruary 28, 2000 letter may have constituted a termination because it reasonably could have marked the permanent cessation of the employment relationship.

■ Because the parties have not addressed the reasonable expectation test of *Damron* cited above, it is unclear when the laid off employees suffered an employment loss. This factual issue must be addressed during discovery. Therefore, summary judgment is inappropriate at this time.

### C. Aggregation

■ In light of the Court's finding that the laid off employees may have suffered an employment loss on February 28, 2000, it is important to address the aggregation rule in 29 U.S.C. section 2102(d) because these losses would fall outside the 30–day period that can be considered in determining whether a plant closing has occurred. The rule states:

> For purposes of this section, in determining whether a plant closing or mass layoff has occurred or will occur, employment losses for 2 or more groups at a single site of employment, each of which is less than the minimum number of employees specified in section 2101(a)(2) or (3) of this title but which in aggregate exceed that minimum number, and which occur within any 90–day period shall be considered to be a plant closing or mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of this chapter.

29 U.S.C. § 2102(d).

In the Opinion and Order, this Court found that the employment losses that occurred on March 31, 2000, and the employment losses that might have occurred by virtue of the earlier layoffs could not be aggregated together because they were for separate and distinct reasons. This find-ing was based on facts in the record that the 1999 layoffs were due to a lack of production work and a slow down of business, while the March 31, 2000 "layoffs" were due to the sale of assets to the Atmosphere Group.

In reconsidering the facts in the record, it is unclear that Defendants' have met their burden under section 2102(d). The facts indicate that on February 16, 2000, Defendants had entered into a non-binding letter of intent regarding Holcroft's sale of its assets to the Atmosphere Group. This letter was not made a part of the record. Even without the letter it is clear, based on Defendants' own statement of facts, that the Atmosphere Group had no intention of hiring Holcroft's manufacturing employees. What is unclear is whether that intent was memorialized in the letter agreement. Nevertheless, in light of this fact Holcroft's February 28, 2000 letter to the employees "updating" them of their employment status is highly suspect. This letter was sent just outside of the 30–day period from the shut down of Holcroft's plant on March 31, 2000. Thus, even if the letter resulted in the termination of the laid off employees, the resulting employment losses could not be considered with those that occurred on March 31, 2000, barring aggregation. In other words, despite the fact that the employees were initially laid off due to lack of production work and slow down of business, there remains an issue of fact as to whether the February 28, 2000 letter was motivated by the proposed sale of assets. If that is the case, then it cannot properly be considered a "separate and distinct" cause. Further, there remains an issue of fact as to whether Holcroft's actions constituted an attempt to avoid the notice requirements of the WARN Act.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Reconsideration [**Doc. 43**] is

GRANTED. The Court's Judgment in this action **[Doc. 42]** is, therefore, vacated and an order will enter reinstating this action.

**IT IS SO ORDERED.**